UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.: 11-20331-CR-SCOLA/BANDSTRA

UNITED STATES OF AMERICA

vs.

IRFAN KHAN

_____/

## IRFAN KHAN'S MOTION FOR DISCLOSURE OF FISA APPLICATIONS AND ORDERS

Irfan Khan hereby files this Motion for Disclosure of the Foreign Intelligence Surveillance Act ("FISA") applications and orders in this case. From 2009 through 2011, the government intercepted thousands of telephone calls involving the Khans who were both the targets and subjects of FISA surveillance during that time period.

Through this motion, Irfan Khan is requesting that this Court order the government to disclose those FISA applications and orders authorizing the surveillance. Normally, defendants in criminal cases are provided complete applications and court orders authorizing searches, wiretaps, and other forms of surveillance. As discussed below, discovery of FISA applications and orders is treated differently from discovery of other forms of similar material. Notwithstanding, based upon the authority cited below, this Court should order the disclosure of the FISA applications and orders in this case.

**1.      The Background and Structure of FISA.**

Congress enacted FISA "to create a framework whereby the Executive could conduct electronic surveillance for foreign intelligence purposes without violating the rights of citizens." *United States v. Hammoud*, 381 F.3d 316, 332 (4th Cir. 2004) (*en banc*), *vacated on other ground*, 543 U.S. 1097 (2005), *reinstated in relevant part*, 405 F.3d 1034 (4th Cir. 2005) (*en banc*). "The Act was intended to strike a sound balance between the need for such surveillance and the protection of civil liberties." *Matter of Kevork*, 788 F.2d 566, 569 (9th Cir. 1986) (quotation omitted). The importance of such protections is manifest given the extraordinary intrusiveness of FISA surveillance and the accompanying potential for abuse.

As the Foreign Intelligence Surveillance Court ("FISC") has observed, FISA surveillance involves "exceptionally thorough acquisition and collection through a broad array of contemporaneous electronic surveillance techniques. Thus, in many U.S. person electronic surveillances the FBI will be authorized to conduct, simultaneously, telephone, microphone, cell phone, e-mail and computer surveillance of the U.S. person target's home, workplace and vehicles. Similar breadth is accorded the FBI in physical searches of the target's residence, office, vehicles, computer, safe deposit box and U.S. mails where supported by probable cause." *In re All Matters Submitted to the Foreign Intelligence Surveillance Court*, 218 F. Supp. 2d 611, 616-17 (FISA Ct. 2002), *abrogated by*, *In re Sealed Case*, 310 F.3d 717 (FISA Ct. Rev. 2002); *see also Olmstead v. United States*, 277 US. 438, 475-76 (1928) (Brandeis, J., dissenting) ("As a means of espionage, writs of assistance and

general warrants are but puny instruments of tyranny and oppression when compared with wire tapping."); *United States v. Smith*, 321 F. Supp. 424, 428 (C.D. Cal 1971) ("Electronic surveillance is perhaps the most objectionable of all types of searches in light of the intention of the Fourth Amendment. It is carried out against an unsuspecting individual in a dragnet fashion, taking in all of his conversations whether or not they are relevant to the purposes of the investigation and continuing over a considerable length of time.")

FISA attempts to protect the privacy of a potential surveillance target through several significant procedural provisions. First, FISA created the FISC, to which the government must apply for an order authorizing electronic monitoring. 50 U.S.C. §§ 1803, 1804. "FISA requires [with several exceptions not implicated in this case] judicial approval before the government engages in an electronic surveillance for foreign intelligence purposes." *United States v. Cavanagh*, 807 F.2d 787, 788 (9th Cir. 1987); *see also Hammoud*, 381 F.3d at 332.

Second, FISA requires the Attorney General to approve any application to the FISC and requires that the application contain certain information and certifications. 50 U.S.C. § 1804. Of significance here, the application to the FISC must include "a statement of the facts and circumstances relied upon by the applicant to justify his belief that . . . the target of the electronic surveillance is a foreign power or an agent of a foreign power." *Id*. at §1804(a)(3)(a); *see also United States v. Posey*, 864 F.2d 1487, 1490 (9th Cir. 1989); *United States v. Cavanagh*, 807 F.2d at 789-91 (9th Cir. 1987). FISA defines the term "foreign power," among other ways, as "a group engaged in international terrorism or activities in

3

preparation therefor." 50 U.S.C. § 1801(a)(4).

Third, FISA requires that the application to the FISC set forth certain "certifications" by an appropriate executive branch official. Among other things, the official must certify "that a significant purpose of the surveillance is to obtain foreign intelligence information." *See* 50 U.S. C. § 1804(a)(6)(b).[1]   Furthermore, the official must certify "that such information cannot reasonably be obtained by normal investigative techniques." *Id.* at § l804(a)(6)(c).

Fourth, the statute specifies findings the FISC must make before the court can approve electronic surveillance or a physical search. *Id*. at § 1805 (electronic monitoring). The court must find that the procedural requirements of FISA have been satisfied. *See, e.g., id* § 1805(a)(2) & (b) (the court must find, among other things, "probable cause to believe that . . . the target of the electronic surveillance is a foreign power or an agent of a foreign power."*)*.

Fifth, FISA authorizes an "aggrieved person" to move to suppress "evidence obtained

---

[1] Prior to the Patriot Act, the government was required to certify that the *primary purpose* of its surveillance was to obtain foreign intelligence information. The Patriot Act authorizes FISA surveillance and searches as long as a *significant purpose* of the surveillance and searches is the gathering of foreign intelligence. 50 U.S.C. §§ 1804(a)(7)(B) and 1823(a)(7)(B)(emphasis added). This amendment permits the government to obtain surveillance orders under FISA even if the government's primary purpose is to gather evidence of domestic criminal activity. *See In re All Matters*, 218 F.Supp.2d at 615 n. 2 (FISA Ct. 2002). As a result, in criminal investigations, the government can now attempt to avoid the Fourth Amendment's probable cause requirement when conducting surveillance a criminal suspect's telephone conversations merely by asserting a desire to also gather foreign intelligence information from the person whom the government intends to criminally prosecute.

or derived from" electronic surveillance if "the information was unlawfully acquired" or "the surveillance was not made in conformity with an order of authorization or approval." *Id*. § l806(e).  FISA defines the phrase "aggrieved person" as "a person who is the target of electronic surveillance or any other person whose communications or activities were subject to electronic surveillance." *Id*. § 1801(k). Under these definitions, Irfan Khan is an "aggrieved person" as to the electronic surveillance that either targeted or intercepted his conversation. *See, e.g., Cavanagh*, 807 F.2d at 789 (person overheard during FISA surveillance of another target is an "aggrieved person"); *United States v. Belfeld*, 692 F.2d 141, 143 & 146 n.21 (D.C. Cir. 1982) (same).

Sixth § 1806(f) provides that, if the Attorney General files an affidavit that "disclosure or an adversary hearing would harm the national security of the United States," a court must consider the application and order for FISA electronic surveillance *in camera* to determine whether the surveillance was lawfully conducted. The statute provides that "[i]n making this determination, the court *may disclose* to the aggrieved person, under appropriate security procedures and protective orders, portions of the application, order, or other materials relating to the surveillance only where such disclosure is necessary to make an accurate determination of the legality of the surveillance." 50 U.S.C. § 1806(f)(emphasis added).

2.    **Factual Background.**

On May 17, 2011, before Irfan made his appearance in the Southern District of Florida, the government filed a Notice of Intent to Use Foreign Intelligence Surveillance Act

Information pursuant to 50 U.S.C. §§ 1806(c) and 1825(d). (DE 19). The number of FISA applications submitted and orders received in unknown to the defense.[2]

Upon information and belief, the FBI intelligence investigation of the Khans began in 2008 and ended in 2011.  To date, the government has produced voluminous materials pertaining to the electronic and telephonic surveillance of the Khans. Upon information and belief, the government did not conduct this surveillance under Title III authority. (DE 41). Therefore, the authority to conduct these electronic and telephonic interceptions was entirely contained within the orders issued by the FISC.

To challenge the admissibility of the evidence obtained pursuant to FISA, Irfan must file a motion to suppress.  Before a motion to suppress may be filed, however, Irfan is requesting that this Court compel the production of the FISA applications and orders to both the Court and to the defense under appropriate security precautions.

**3.      The Court Should Order Production.**

The Court should order production of the FISA applications and orders to cleared defense counsel for review in their secure room under the well-established procedures set out in the Classified Information Procedures Act ("CIPA"), 18 U.S.C. App. 3. Disclosure of these materials is "necessary to make an accurate determination of the legality of the surveillance," 50 U.S.C. §1806(f), and is required as a matter of due process, *see id.* § 50 U.S.C. 1806(g).

---

[2] FISA authorizes surveillance terms from 90 to 120 days. 50 U.S.C. § 1805(d)(1).  By contrast, Title III limits the term of surveillance to 30 days. 18 U.S.C. § 2518(5).

According to the legislative history of FISA, disclosure may be "necessary" under § 1806(f):

> where the court's initial review of the application, order, and fruits of the surveillance indicates that the question of legality may be complicated by factors such as 'indications of possible . . . misinterpretation of fact, vague identification of the persons to be surveilled, or surveillance records which include a significant amount of nonforeign intelligence information, calling into question compliance with the minimization standards contained in the order.'

*United States v. Belfeld*, 692 F.2d at 147 (D.C. Cir. 1982)  (quoting S. Rep. No. 701, 95th Cong., 2d Sess, 64 (1979)); *see also United States v. Ott*, 827 F.2d 473, 476 (9th Cir. 1987) (same).

Here, disclosure is "necessary" for counsel to assist the Court in determining whether the applications establish probable cause to believe that the target of the surveillance is a foreign "power" or "agent"; whether the "significant purpose" of the FISA surveillance was gathering foreign intelligence, and not, impermissibly, for a criminal investigation; and whether a *Franks* hearing is necessary. Without access to the requested discovery in the case, this Court cannot accurately resolve these issues.

The defense should obtain disclosure of the FISA applications, orders, and related materials under § 1806(g) and the Fifth Amendment Due Process Clause. To determine whether due process requires the requested disclosure, the Court must consider the three factors set forth in *Mathews v. Eldridge*, 424 US. 319 (1976):

(1) "the private interest that will be affected by the official

> action," (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards," and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail."

*Id*. at 335; *see also Am.-Arab Anti-Discrimination Comm. v. Reno*, 70 F.3d 1045, 1068-71 (9th Cir. 1995)(applying *Mathews* test to determine whether use of secret evidence violates due process); *Rafeedie v. INS*, 880 F.2d 506, 524-25 (D.C. Cir. 1989) (*Mathews* balancing test governs process due alien in exclusion proceeding, including use of secret evidence), *on remand*, 795 F. Supp. 13, 18-20 (D.D.C. 1992) (same); *Kiareldeen v. Reno*, 71 F. Supp. 2d 402, 413-14 (D.N.J. 1999) (same). Application of the *Mathews* test confirms that this Court should allow the defense access to the requested FISA materials.

The defense's "private interests" at stake here are weighty. Irfan Khan seeks an accurate determination of his claim that the government's secret surveillance violated his privacy rights under FISA and the Fourth and Fifth Amendments to the Constitution. More generally, he seeks to invoke the judicial process to avoid deprivation of his liberty. If mere property interests "weigh heavily in the *Mathews* balance," as the Supreme Court has held, *United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 54-55 (1993), Irfan's privacy and other liberty interests must possess even greater significance.

Turning to the second *Mathews* factor, an adjudication of Irfan's rights under FISA though *ex parte* review of materials that counsel will have no opportunity to review carries a notoriously significant "risk of an erroneous deprivation" of the liberty interests at issue.

8

Conversely, "additional . . . procedural safeguards" —  access to the FISA materials and an opportunity to address them– have substantial "probable value." *Mathews*, 424 U.S. at 335. The Supreme Court has declared that "'fairness can rarely be obtained by secret, one-sided determination of facts decisive of rights. . . . No better instrument has been devised for arriving at truth than to give a person in jeopardy of serious loss notice of the case against him and opportunity to meet it.'" *James Daniel Good Real Prop*., 510 U.S. at 55 (quoting *Joint Anti-Fascist Refugee Comm. v. McGrath*, 341 U.S. 123, 170-72 (1951) (Frankfurter, J., concurring)).

As the Ninth Circuit observed in a secret evidence case, "'One would be hard pressed to design a procedure more likely to result in erroneous deprivations.' (T)he very foundation of the adversary process assumes that use of undisclosed information will violate due process because of the risk of error." *Am.-Arab Anti-Discrimination Comm.*, 70 F.3d at 1069 (quoting district court); *see also id.* at 1070 (noting "enormous risk of error" in use of secret evidence); *Kiareldeen*, 71 F. Supp. 2d at 412-14 (same).

In the Fourth Amendment context, the Supreme Court has twice rejected the use of *ex parte* proceedings on grounds that apply here. In *Alderman v. United States*, 394 U.S. 165 (1969), the Court addressed the procedures to be followed in determining whether government eavesdropping in violation of the Fourth Amendment contributed to its case against the defendants. The Court rejected the government's suggestion that the district court make that determination *ex parte* and *in camera*. The Court observed that "[a]n apparently

innocent phrase, a chance remark, a reference to what appears to be a neutral person or event, the identity of a caller or the individual on the other end of a telephone, or even the manner of speaking or using words may have special significance to one who knows the more intimate facts of an accused's life. And yet that information may be wholly colorless and devoid of meaning to one less well acquainted with all relevant circumstances." *Id*. at 182.[3]

In ordering disclosure of improperly recorded conversations, the Court decreed:

> Adversarial proceedings will not magically eliminate all error, but they will substantially reduce its incidence by guarding against the possibility that the trial judge, through lack of time or unfamiliarity with the information contained in and suggested by the materials, will be unable to provide the scrutiny which the Fourth Amendment exclusionary rule demands.

*Id*. at 184.

Similarly, the *Franks* Court held that a defendant must be permitted to attack the veracity of the affidavit underlying a search warrant, upon a preliminary showing of an intentional or reckless material falsehood. The Court rested its decision in significant part on the *ex parte* nature of the procedure for issuing a search warrant and the value of adversarial proceedings:

---

[3] The FISC, in a May 17, 2002, opinion, enumerated numerous misstatements and omissions of material facts in approximately seventy-five FISA applications. *In re All Matters*, 218 F. Supp. 2d at 620. Subsequent oversight revealed that approximately seventy-five FISA applications filed with the FISA Court from January 1997 to July 2000, and fifteen FISA applications filed from September 2000 to March 2001, contained material inaccuracies. *See* The USA PATRIOT ACT in Practice: Shedding Light on the FISA Process: Hearing Before the S. Comm. on the Judiciary, 107th Cong. 62 (2002).

> [T]he hearing before the magistrate [when the warrant is issued] not always will suffice to discourage lawless or reckless misconduct. The pre-search proceeding is necessarily *ex parte*, since the subject of the search cannot be tipped off to the application for a warrant lest he destroy or remove evidence. The usual reliance of our legal system on adversary proceedings itself should be an indication that an *ex parte* inquiry is likely to be less vigorous. The magistrate has no acquaintance with the information that may contradict the good faith and reasonable basis of the affiant's allegations. The pre-search proceeding will frequently be marked by haste, because of the understandable desire to act before the evidence disappears; this urgency will not always permit the magistrate to make an extended independent examination of the affiant or other witnesses.

*Franks*, 438 U.S. at 169; *see also Dennis v. United States*, 384 U.S. 855, 875 (1966) ("In our adversary system, it is enough for judges to judge. The determination of what may be useful to the defense can properly and effectively be made only by an advocate."); *United States v. Marzook*, 412 F. Supp. 2d 913, 921 (N.D. Ill. 2006) ("It is a matter of conjecture whether the court performs any real judicial function when it reviews classified documents *in camera*. Without the illumination provided by adversarial challenge and with no expertise in the field of national security, the court has no basis on which to test the accuracy of the government's claims.").

The same considerations that the Supreme Court found compelling in *Alderman* and *Franks* counsel against the use of an *ex parte* procedure with regard to the defense's instant request. As the FISC has acknowledged, without adversarial proceedings, systematic Executive Branch errors — including submission of FISA applications with "erroneous statements" and "omissions of material facts" — went entirely undetected by the courts until

11

the DOJ elected to reveal these violations. *See In re All Matters*, 218 F. Supp. 2d at 620-21. Full disclosure to cleared counsel, followed by adversarial proceedings — *in camera* if necessary — will produce far more accurate fact-finding than an *ex parte* procedure.

Finally, the Court must consider the government's purported interest in maintaining the secrecy of the FISA materials. The government ordinarily asserts a generalized interest in avoiding damage to "national security," without any effort to demonstrate that the particular disclosure of the FISA materials to defense counsel here, under appropriate protections, will cause such damage.  Courts have previously rejected such diffuse claims of national security. *See, e.g., Am.-Arab Anti-Discrimination Comm.,* 70 F.3d at 1070 ("We cannot in good conscience find that the President's broad generalization regarding a distant foreign policy concern and a related national security threat suffices to support a process that is inherently unfair because of the enormous risk of error and the substantial personal interests involved."); *Kiareldeen*, 71 F. Supp. 2d at 414 (same); *Rafeedie*, 795 F. Supp. at 19 (same).

Any claim made by the government here regarding a national security interest in withholding the FISA materials from the defense is particularly weak. Defense counsel have security clearances and an obvious "need to know" the information. The Court has put in place a CIPA protective order, that provides elaborate protections for classified information and that permits classified materials to be disclosed to defense counsel and to Irfan Khan only on a limited basis.  Moreover, as Judge Lenard has held, the government can request

12

permission to redact any particularly sensitive "sources and methods" information. *Najjar v. Reno*, 97 F. Supp. 2d 1329, 1358-59 (S.D. Fla. 2000) (proposing procedures for handling classified evidence in deportation context), *vacated as moot*, 273 F.3d 1330 (11th Cir.2001).

Upon an objective assessment of the government's national security claim, the Court should find that the first and second *Mathews* factors substantially outweigh the government's professed need to withhold the FISA materials, and should order the FISA applications and orders disclosed to defense counsel as a matter of due process.

Pursuant to local rule, the undersigned conferred with the prosecutor assigned to this case in an effort to resolve the issue presented by this motion.  The government opposes the relief requested.

Respectfully Submitted,

MICHAEL CARUSO
INTERIM  FEDERAL PUBLIC DEFENDER

BY:   *s/ Michael Caruso*
Florida Bar No. 0051993
Sowmya Bharathi
Assistant Federal Public Defender
Special A No.: A5500997
150 West Flagler Street, Suite 1700
Miami, Florida 33130-1556
Tel:  305-530-7000/Fax:  305-536-4559
michael_caruso@fd.org
sowmya_bharathi@fd.org

## CERTIFICATE OF SERVICE

I HEREBY certify that on December 2, 2011, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or *pro se* parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

s/ *Michael Caruso*