UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.: 11-20331-CR-SCOLA/BANDSTRA

UNITED STATES OF AMERICA

vs.

IRFAN KHAN
_____/

**IRFAN KHAN'S REPLY TO GOVERNMENT'S RESPONSE TO
MOTION TO DISCLOSE AND SUPPRESS**

Irfan Khan, through undersigned counsel, hereby files his Reply to the Government's Response (DE 263) to his Motion For Disclosure of FISA Applications and Orders (DE 212) and For Suppression of Evidence Derived from FISA Intercepts (DE 236).

**I.     The Court Should Order the Disclosure of the FISA Applications and Orders.**

Without a hint of irony or embarrassment, the government vigorously asserts that the defense is not entitled to the purportedly "secret" information sought in our Motion to Disclose, and then chides us for relying upon allegations, conjecture, and speculation.  In federal criminal cases, the Fourth, Fifth and Sixth Amendments provide the core of our adversary system. The use of secret evidence, to be used at the whim and advantage of a government that is prone to abuse, distorts our adversary process.

This is particularly true under FISA. For the years 2008-2010, the government

1

submitted nearly 5,000 application to the FISA Court.[1] Only two were rejected in whole and one in part. *Id.*  Judicial review, through the adversary process, of Executive Branch action is a hallmark of our Constitution. Yet, at present, the government asserts that FISA should operate completely in the dark even when the results of such surveillance are to be used in a public criminal trial.  This Court should halt this severe erosion of the criminal justice system and authorize the defense to review, under the appropriate conditions, information that clearly is material and relevant and not otherwise available to the defense.

The government contends that 50 U.S.C. § 1806(f) prohibits disclosure of the FISA applications, orders, and related documents to defense counsel in this case. The government's absolutist position contradicts the language and legislative history of FISA, which contemplate disclosure in appropriate cases.  The government's position also violates the command of the Fifth Amendment Due Process Clause because Irfan has substantial interests at stake here, the risk of erroneous deprivation is high, and the government's purported national security interest is minimal.

Before addressing the statutory and constitutional issues involved here, the defense must first point out that in answering Irfan's arguments, the government takes the position that defense counsel cannot have access to the classified portions of the government's response.  As the Court will see, the government's response contains numerous substantive

---

[1] *See* http://www.fas.org/irp/agency/doj/fisa/2010rept.pdf (2010 FISA Report); http://www.fas.org/irp/agency/doj/fisa/2009rept.pdf (2009 FISA Report); and http://www.fas.org/ irp/agency/doj/fisa/2008rept.pdf (2008 FISA Report).

classified *ex parte* portions (*see* Government's Response at pp.1, 3-4, 6, 11, 21, 29, 31, 34-40, & 44) thus eliminating any possibility that defense counsel can identify errors that, unbeknownst to the Court, will seriously impair Irfan's rights. Indeed, the entire section devoted to whether the government established probable cause in obtain the FISA orders is classified. *See id.* at pp. 37-39. The government, in short, seeks to cut the defense out of the FISA litigation to the greatest extent possible. The government's sweeping position that disclosure of all or some or any of these arguments to defense counsel would damage national security is difficult to believe and should be questioned by the Court.

If the government is allowed to present secret arguments to the Court, the defense simply cannot respond in any meaningful way to the government's pleading, as the public version is little more than a generalized recitation of the history of FISA. At the outset, therefore, Irfan Khan respectfully requests the Court order the government to provide the defense with the classified response or order the government in an adversarial setting to justify filing all the substantive sections *ex parte*. If the government refuses to disclose the response or to submit to such adversarial testing, the defense requests that the Court not consider the *ex parte* information.

Turning to the merits of the disclosure issue, section 1806(f) provides, in part, that courts may review and disclose FISA applications and related materials "as may be necessary to determine whether the surveillance of the aggrieved person was lawfully authorized and conducted." In making such a determination, the court "may disclose to the aggrieved person, under appropriate security procedures and protective orders, portions of the application,

order, or other materials relating to the surveillance only where such disclosure is necessary to make an accurate determination of the legality of the surveillance." *Id*. Even when the Attorney General does file an affidavit claiming that disclosure of the FISA materials would harm the national security of the United States, FISA grants the Court discretion to disclose FISA materials to an aggrieved person like Irfan. 50 U.S.C. § 1806(f).

The government pays scant attention to the plain language of Section 1806(f), which permits disclosure of FISA materials when "necessary to make an accurate determination of the legality of the surveillance," and to the legislative history of that provision, which recognizes that disclosure may be "necessary" under § 1806(f) in certain circumstances. *See, e.g., United States v. Belfield*, 692 F.2d 141,146 (D.C. Cir. 1982) (citing S. Rep. No. 701, 95thCong., 2d Sess. 64 (1979). But having made a perfunctory bow to the controlling language, the government argues, in effect, that disclosure is never "necessary" under § 1806(f). This position is unsupportable.

As with any statute, the cardinal principle of statutory interpretation is that courts must "presume that Congress said what it meant and meant what it said." *Harry v. Marchant*, 291 F.3d 767, 770 (11th Cir.2002). The plain language of section 1806(f) constitutes a clear signal from Congress that unambiguously grants discretion to the Court to review FISA materials in a manner that is not *ex parte* and authorizes defense counsel to review these materials under appropriate conditions.

The government's position would render Sections 1806(f) & (g) inoperable in perpetuity. According to the government's logic, because courts have not yet ordered such

4

disclosure (and there have not been that many cases involving FISA in the statute's relatively short history), it is inappropriate in all cases forever. That cannot be. Otherwise, Sections 1806(f) and (g) are rendered a nullity. The government seeks a categorical denial of access by cleared defense counsel because the government cannot advance a single specific articulable reason why, in this case, cleared counsel cannot review the materials and be permitted to respond under CIPA.

In determining whether disclosure is necessary in this case, the Court should consider whether any irregularities exist. For example: do the materials evidence possible misrepresentations of fact; are the persons to be surveilled not clearly identified; or do the surveillance records include a significant amount of non-foreign intelligence information, indicating a possible issue with the minimization standards utilized. *United States v. Belfield*, 692 F.2d 141, 147 (D.C.Cir.1982).

Obviously, Irfan and his counsel are not in a position to apply all of the factors set forth by *Belfield*. Nevertheless, because the intercepted telephone calls have been declassified and disclosed, counsel are aware that a significant amount of non-foreign intelligence information is included in the records. Matters as mundane as prescription medication needs, routine business dealings, family squabbles, a long-running Pakistani court case, and even discussions about the theft of dirt from a plot of land in Pakistan are all discussed in these calls. Therefore, the defense also respectfully requests the Court to consider carefully whether the "identification of the persons to be surveilled" sufficiently is clear and whether

5

the minimization standards included in the Orders have been met.

In addition to the statutory basis for disclosure, Due Process demands that the FISA application and orders be disclosed. Upon an objective assessment of the government's national security claim, the Court should find that the first and second *Mathews* factors substantially outweigh the government's professed need to withhold the FISA materials, and should order the FISA applications and orders disclosed to defense counsel as a matter of due process.

At bottom, analysis of the issue of disclosure of "classified" information is two-fold: need to know and clearance to know. The issue before the Court is whether disclosure to counsel would be helpful to the Court; *i.e.*, need to know. The Court should conclude that participation by Irfan's counsel would be helpful to make the required evaluation of the FISA material. Defense counsel have been cleared to receive the information. In this case, at least one attorney for each accused is cleared to review, and has in fact reviewed, classified information. Our security clearances and the Court's protective orders provide strong assurance that national security will not be compromised. And, if a new or modified protective order must be issued, then of course the defense is agreeable to that procedure.

Counsel for Irfan Khan are not asking the Court to make these applications public. Rather, the defense merely asks that the adversary system be allowed to function in the ordinary fashion — so that defense counsel who have undergone rigorous background checks can effectively represent their clients. No harm to national security would occur if the Court disclosed the FISA applications, orders, and other materials (or portions thereof)

to cleared counsel under the terms of the CIPA protective order that governs this case. Without access to the applications and orders, Irfan and his counsel cannot meaningfully challenge the legality of the wiretap.

**II. The FISA Surveillance Violated the Fourth Amendment Because the "Significant Purpose" of the Surveillance Was Not to Obtain Foreign Intelligence Information. In Addition, the Court Should Hold that the FISA Certifications, Minimization Procedures, and Probable Cause Determinations Are Lacking.**

If the Court decides to conduct a review of these determinations relying on the *ex parte* materials submitted by the government, there can be no question that the review should be *de novo*. *See, e.g., United States v. Rosen*, 447 F.Supp.2d 538, 545 (E.D. Va. 2006) (stating that review is *de novo*, "especially given that the review is ex parte and thus unaided by the adversarial process."). Irfan will not repeat here the extensive arguments made in the initial Motions and respectfully refers the Court to those arguments. As made clear in Irfan's motions, however, a *de novo* review of the FISA application papers will fail to demonstrate that a "significant purpose" of the surveillance was to obtain "foreign intelligence information" and as such any information derived from the FISA wiretaps must be suppressed.

Furthermore, a *de novo* review will indicate that the government failed to minimize electronic surveillance interceptions as required by 50 U.S.C. § 1801(h) and the affidavits and certifications submitted as part of the FISC application papers were "clearly erroneous" within the meaning of 50 U.S.C. §§ 1805(a)(4) and 1824(a)(5).

**III. The Court Should Conduct a Hearing to Determine Whether the FISA Applications Contain Intentional or Reckless Material Falsehoods and Omissions, and the Surveillance Therefore Violates the Fourth and Fifth Amendments under *Franks*.**

7

A *de novo* review will reveal that the Applications were based on materially false statements or omissions, knowingly and intentionally made, or made with reckless disregard for the truth. *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978). Irfan requests a *Franks* hearing to challenge these statements and omissions.

### IV. The *Leon* "Good Faith" Exception Does Not Apply To FISA.

The government invites the Court, if probable cause is found lacking, to apply the good faith exception that the Supreme Court created in *United States v. Leon*, 468 U.S. 897 (1984). Government Response at pp.33-34. Unlike Title III, which was amended after *Leon* to make the good faith exception applicable to constitutional violations, Congress made no such amendment to 50 U.S.C. § 1806(g), the statutory exclusionary remedy that FISA provides.

Congress enacted FISA in 1978, six years before the Supreme Court decided *Leon*. In enacting FISA, Congress specifically provided that, if the district court "determines that the surveillance was not lawfully authorized or conducted," the court "shall, in accordance with the requirements of law, suppress the evidence which was unlawfully obtained or derived." 50 U.S.C. § 1806(g) (emphasis added). The plain language of the statute could not have incorporated the good faith exception, as the government contends, because the Supreme Court had not yet created that exception when Congress adopted § 1806(g). And although Congress amended Title III after *Leon* to incorporate the good faith exception, it chose not to do so with respect to FISA, most notably during the Patriot Act amendments. Accordingly, the judicially-created good faith exception to the Fourth Amendment exclusionary rule does not apply to the statutory exclusionary remedy that FISA provides.

8

Even if the Court were to find the good faith exception generally applicable in the FISA context, the exception may not extend to the surveillance at issue here. The good faith exception does not apply when a law enforcement official relies on a warrant "based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Leon*, 468 U.S. at 923 (quotation omitted).

**V. Conclusion.**

Based on the foregoing, the Court should order the government to produce the FISA applications, orders, and related documents associated with the surveillance at issue here and suppress all evidence derived directly or indirectly from the FISA surveillance.

Respectfully Submitted,

MICHAEL CARUSO
INTERIM FEDERAL PUBLIC DEFENDER

BY: *s/ Michael Caruso*
Florida Bar No. 0051993
Sowmya Bharathi
Assistant Federal Public Defender
Special A No.: A5500997
150 West Flagler Street, Suite 1700
Miami, Florida 33130-1556
Tel: 305-530-7000/Fax: 305-536-4559
michael_caruso@fd.org
sowmya_bharathi@fd.org

**CERTIFICATE OF SERVICE**

I HEREBY certify that on February 3, 2012, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or *pro se* parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

s/ *Michael Caruso*